UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JONATHAN ROSADO,

     Plaintiff,

v.

CORRECTION OFFICER PETER
MASTRANTONIO, COURTNEY
BENNETT, HARRY EDWARDS,
MATTHEW SHUMAKER, LARRY
GLEASON, DUSTIN ELLIS, KEVIN
AIKEN, and BRIAN CRAWFORD,

     Defendants.

**DECISION AND ORDER**

6:17-CV-06571 EAW

---

## **INTRODUCTION**

Plaintiff Jonathan Rosado ("Plaintiff"), a prisoner in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), asserts various claims under 42 U.S.C. § 1983 related to an incident at the Southport Correctional Facility ("Southport") on September 4, 2015. (*See* Dkt. 1; Dkt. 21). Currently pending before the Court are: (1) a motion for summary judgment filed by defendants Kevin Aiken, Brian Crawford, Harry Edwards, Dustin Ellis, Larry Gleason, and Matthew Shumaker (collectively the "State Defendants") (Dkt. 62); (2) a motion for partial summary judgment filed by defendant Peter Mastrantonio (Dkt. 63); and (3) a motion for partial summary judgment filed by defendant Courtney Bennett (Dkt. 64). For the reasons set forth below, the Court: (1) grants in part and denies in part the State Defendants' motion for summary

- 1 -

judgment (Dkt. 62); (2) grants in part and denies in part Mastrantonio's motion for partial summary judgment (Dkt. 63); and (3) grants in part and denies in part Bennett's motion for partial summary judgment (Dkt. 64).

## FACTUAL BACKGROUND

The following facts are taken from the parties' respective statements of undisputed material facts, the responses thereto, and the parties' exhibits. Unless otherwise noted, these facts are uncontroverted.

Southport is a maximum-security facility designed to house long-term special housing unit inmates. (Dkt. 62-1 at 1; Dkt. 66-1 at 1). Inmates at Southport do not have regular programming or communal activities; instead, they are allowed one hour of daily recreation and, other than for visits, sick call, and showers, are confined to their cells the remaining 23 hours per day. (Dkt. 62-1 at 1; Dkt. 66-1 at 1). Meals are delivered to inmates in their cells. (Dkt. 62-1 at 1; Dkt. 66-1 at 1).

On September 4, 2015, Plaintiff was incarcerated at Southport. (Dkt. 62-1 at 1; Dkt. 66-1 at 1). Plaintiff had previously been housed at Southport in 2011, but had been transferred out after he attempted suicide by hanging. (Dkt. 62-1 at 2; Dkt. 66-1 at 3). Plaintiff was transferred back to Southport following a misconduct incident occurring at the Attica Correctional Facility on July 13, 2015. (Dkt. 63-1 at 4; Dkt. 66-1 at 6).

At approximately 12:55 p.m. on September 4, 2015, Plaintiff was escorted by Mastrantonio and Bennett, who were corrections officers at Southport, to a mental health callout with social worker Emily Guery. (Dkt. 62-1 at 2; Dkt. 66-1 at 3). While being

escorted back from this appointment, Plaintiff was involved in a use of force incident outside the shower area on the B-block 7-gallery. (Dkt. 62-1 at 3; Dkt. 66-1 at 3).

Plaintiff claims that a few days prior to the use of force incident, prisoners on his gallery began complaining to the corrections officers about showers. (Dkt. 66-1 at 10). According to Plaintiff, he told the corrections officers he was going to write a grievance, and other prisoners agreed with him. (*Id.* at 11). Plaintiff further claims that on the night he complained about the showers, the corrections officers "broadcast over the gallery intercom that [Plaintiff] was in jail for fucking little boys" and "comments such as '[Plaintiff's] mother was a whore.'" (*Id.*). None of the defendants in this case were "shower officers" at Southport during the relevant time period. (Dkt. 62-1 at 5; Dkt. 66-1 at 5).

In Plaintiff's version of events, on the way to his appointment with social worker Guery on September 4, 2015, Bennett said to him, "so you are the one running stuff. You are the one getting everybody to write a grievance on the company." (Dkt. 66-1 at 10). Plaintiff claims that while he was walking back from his appointment with social worker Guery with his hands handcuffed behind his back, Mastrontonio "turned and punched [Plaintiff] in the face two times," and Bennett then pulled Plaintiff down by the handcuffs while punching him. (*Id.* at 11-12). According to Plaintiff, shortly after the first punch, Edwards, who was a sergeant at Southport, and "multiple other guards" arrived on the scene, and Edwards jumped on top of Plaintiff and began "throwing elbows at him and punching him" while "everybody else was standing up kicking and punching" Plaintiff. (*Id.* at 12).

Shumaker, Aiken, Ellis, Crawford, and Gleason were among the corrections officers who responded to the incident. (*See* Dkt. 71-1 at 5). Plaintiff has been unable to specifically identify any other corrections officers as participating in the alleged assault against him, and "does not know how many guards hit him," but maintains that "there were too many punches and kicks to be just . . . Mastrantonio and Bennett." (*Id.*; *see also* Dkt. 66-4 at 7 (Plaintiff acknowledging that he was "able to see and specifically identify only Sergeant Edwards")). Plaintiff claims that during the alleged assault, an unidentified corrections officer stated, "this is what you get; keep talking shit." (Dkt. 66-1 at 12).

Shumaker has acknowledged placing mechanical restraints including a waist chain on Plaintiff. (Dkt. 66-3 at 20-21). Plaintiff maintains that the waist chain was placed so tightly than it cut through his skin, resulting in scarring on his waist. (Dkt. 66-1 at 13; Dkt. 62-3 at 64). Plaintiff claims that three corrections officers then lifted him up by the waist chain and threw him head first into the shower. (Dkt. 66-1 at 13). According to Plaintiff, "[f]rom the start of the beating until [Plaintiff] was placed into the shower took about four minutes." (*Id.*). Plaintiff states that he suffered injuries including abrasions and bruising and that "[a]mong the visible bruises was a boot print above [Plaintiff's] left eye." (*Id.*). Plaintiff was taken to Arnot Ogden Hospital, where he was found to have soft tissue swelling and a right frontal lateral scalp hematoma, but no broken or fractured bones. (Dkt. 62-1 at 4; Dkt. 66-1 at 4).

Plaintiff filed two grievances related to the events of September 4, 2015, which were both designated as grievance FPT-30834-15. (Dkt. 62-3 at 78-83). In his grievance dated September 29, 2015, Plaintiff reported that on September 4, 2015, he was "assaulted by

- 4 -

officials at Southport C.F." and further claimed that his request for copies of photographs of his injuries had been wrongfully denied. (*Id.* at 78). In his grievance dated October 8, 2015, Plaintiff went into more detail regarding the alleged assault. (*Id.* at 80). He reported that Mastrantonio and Bennett had punched him while he was standing and, after he fell to the floor, punched and kicked him all over his body. (*Id.* at 80-81). Plaintiff further stated that Edwards and "two-three officers (names unknown)" then joined Mastrantonio and Bennett, that Edwards jumped on top of Plaintiff and began punching him, and that Plaintiff "was being punched, kicked and dragged from every direction," but could not keep his eyes open "to see who was throwing what kicks or punches." (*Id.* at 81).

## **PROCEDURAL HISTORY**

Plaintiff commenced the instant action on August 15, 2017. (Dkt. 1). The operative pleading is the Amended Complaint, filed on March 19, 2018. (Dkt. 21). In his Amended Complaint, Plaintiff alleges the following causes of action: (1) "defendants used unnecessary and excessive force against plaintiff, in violation of plaintiff's right to be free from cruel and unusual punishment, as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution; (2) "defendants violated the rights to freedom of speech and freedom to petition the government for a redress of grievances guaranteed to [Plaintiff] under the First Amendment to the United States Constitution; and (3) "Defendants Mastrantonio and Bennett violated [Plaintiff's] right to due process of law under the 14th Amendment of the United States Constitution." (*Id.* at 5-6).

Discovery in this matter is closed. (*See* Dkt. 34). The State Defendants filed their motion for summary judgment on May 8, 2019. (Dkt. 62). Mastrantonio and Bennett filed

their respective motions for partial summary judgment on May 9, 2019. (Dkt. 64; Dkt. 64). Plaintiff filed an omnibus response to the pending summary judgment motions on June 6, 2019. (Dkt. 66). The State Defendants filed a reply on June 14, 2019. (Dkt. 67). With the Court's permission, Plaintiff filed a sur-reply regarding the State Defendants' motion on July 11, 2019. (Dkt 70; Dkt. 71).

## DISCUSSION

### I. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that

there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## II. Due Process Claim

Plaintiff's Amended Complaint asserts a claim against Mastrantonio and Bennett for violation of Plaintiff's right to due process. (Dkt. 21 at 6). Mastrantonio and Bennett both seek summary judgment on this claim. (*See* Dkt. 63-4 at 3; Dkt. 64-5 at 7-8). In response, Plaintiff acknowledges that he cannot maintain his due process claim based on the record in this case and agrees to withdraw it. (Dkt. 66-4 at 5). According, the Court grants Mastrantonio's and Bennett's motions for summary judgment with respect to this claim.

## III. Excessive Use of Force Claim

Shumaker, Gleason, Ellis, Aiken, and Crawford (hereinafter the "Responding Officers") seek summary judgment as to Plaintiff's excessive use of force claim. They argue that Plaintiff has no personal knowledge that any of the Responding Officers participated in the alleged assault, that no witnesses or physical evidence connect the

Responding Officers to the alleged assault, and that as such a reasonable jury could not find in favor of Plaintiff on this claim. (Dkt. 62-6 at 4-8). The Responding Officers further argue that Plaintiff failed to exhaust his administrative remedies as to them, because his grievance claimed only that Mastrantonio, Bennett, Edwards, and two to three unknown officers assaulted him, not that five additional officers participated in or observed the assault. (*Id.* at 8). In response, Plaintiff argues that he should be permitted to proceed against the Responding Officers on the theory that they either participated in the assault or wrongfully failed to intervene to stop it. (Dkt. 66-4 at 10-14). The Responding Officers contend that they cannot be held liable on a failure to intervene theory because Plaintiff neither grieved nor pleaded such a claim against them.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). "[A]n officer may be personally involved in the use of excessive force if he either directly participates in the assault or if he was present during the assault, yet failed to intervene on behalf of the victim, even though the officer had a reasonable opportunity to do so." *Jordan v. Fischer*, 773 F. Supp. 2d 255, 274 (N.D.N.Y. 2011). "[A] plaintiff need not establish who, among a group of officers, directly participated in the attack and who failed to intervene." *Younger v. City of New York*, 480 F. Supp. 2d 723, 732 (S.D.N.Y. 2007); *see also Centeno v. City of New York*, No. 16-CV-2393 (VSB), 2019 WL 1382093, at *8 (S.D.N.Y. Mar. 27, 2019) (holding the same and denying motion for summary judgment on excessive force claim where it was "undisputed that all four Defendants were

present during the altercation with Plaintiff"). However, a plaintiff does have to demonstrate that the officers who allegedly failed to intervene had "a realistic opportunity to intervene and prevent the harm." *Rodriguez v. City of New York*, 291 F. Supp. 3d 396, 417 (S.D.N.Y. 2018). "[W]hen considering the reasonableness of any opportunity to intervene, one must consider both (a) the duration of the constitutional violation, and (b) the defendant's presence and proximity during the use of the constitutional violation." *Thomas v. City of Troy*, 293 F. Supp. 3d 282, 296 (N.D.N.Y. 2018).

Here, the Court finds that on the record before it, no reasonable jury could find Gleason, Ellis, Aiken, or Crawford liable to Plaintiff on his excessive use of force claim. While it is undisputed that these defendants responded to the scene of the incident on September 4, 2015, there is no evidence in the record supporting the conclusion that any of them were personally involved in the alleged excessive use of force against Plaintiff. Plaintiff cannot say when any of these defendants arrived on the scene, no witnesses can place them at the scene at any particular time, and they all testified that by the time they arrived Bennett and Mastrantonio had already used body holds to restrain Plaintiff on the ground. There is also no information in the record regarding these defendants' proximity to Plaintiff at the relevant points in time. In other words, with respect to Gleason, Ellis, Aiken, and Crawford, the record before the Court—taken in the light most favorable to Plaintiff—shows only that they were present at the scene of the use of force incident at an unknown time, for an unknown duration, and in an unknown proximity to Plaintiff. On these facts, there is simply no reasonable basis for a jury to conclude that any of these particular defendants either used force against Plaintiff or arrived on the scene with

sufficient time and proximity to stop Bennett, Mastrantonio, or Edwards from allegedly beating Plaintiff. *See Piper v. City of Elmira*, 12 F. Supp. 3d 577, 596 (W.D.N.Y. 2014) (granting summary judgment with respect to defendants who responded to the scene where there was "no evidence in the record before the Court as to the location of any of these officers at the scene, much less evidence that these officers were in a position from which they could have intervened during the challenged uses of force"); *Mikulec v. Town of Cheektowaga*, 909 F. Supp. 2d 214, 221 (W.D.N.Y. 2012) (granting summary judgement on failure to intervene claim where "the only evidence tending to prove this claim is that [the defendants] were present at the scene"). Accordingly, Gleason, Ellis, Aiken, and Crawford are entitled to summary judgment on Plaintiff's excessive use of force claim.[1]

However, the Court reaches a different conclusion with respect to Shumaker. As noted above, the record demonstrates that Shumaker was the corrections officer who placed mechanical restraints, including a waist chain, on Plaintiff. (*See* Dkt. 71-1 at 4-5). Plaintiff claims that the waist chain was placed on him so tightly that it cut his skin and caused scarring on his waist. This is sufficient to support an excessive use of force claim against Shumaker. *See Washpon v. Parr*, 561 F. Supp. 2d 394, 407 (S.D.N.Y. 2008) ("[U]se of restraints in such a way as to cause permanent injury or scarring may support an excessive force claim."); *see also Davidson v. Flynn*, 32 F.3d 27, 30 (2d Cir. 1994) (finding "material

---

[1] Because the Court reaches this conclusion, it need not and does not reach Gleason's, Ellis', Aiken's, and Crawford's argument that Plaintiff did not exhaust his administrative remedies with respect to the excessive use of force claim against them.

questions of fact" as to whether it was "necessary for the defendants to shackle the plaintiff so tightly as to cause severe pain and permanent injury").

The Court further finds that Plaintiff exhausted his excessive force claim against Shumaker. The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . ., or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e. "[T]he PLRA's exhaustion requirement applies to 'all inmate suits about prison life, whether they involve general circumstances or particular episodes.'" *Lawrence v. Goord*, 304 F.3d 198, 200 (2d Cir. 2002) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)).

To satisfy the PLRA's exhaustion requirement, "prisoners in New York must ordinarily follow a three-step [DOCCS] grievance process. The first step in that process is the filing of a grievance with the Inmate Grievance Resolution Committee. Next, the inmate may appeal an adverse decision to the prison superintendent. Finally, the inmate may appeal the superintendent's decision to the Central Office Review Committee ('CORC'). In general, it is only upon completion of all three levels of review that a prisoner may seek relief in federal court under § 1983." *Crenshaw v. Syed*, 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010) (internal citation omitted).

Here, it is undisputed that Plaintiff filed grievances related to the incident at issue and that he completed all levels of review. "[A] grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All

the grievance need do is object intelligibly to some asserted shortcoming." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (quotation omitted). Plaintiff's grievance dated October 8, 2015, specifically references his having been put into a waist chain as part of the claimed assault. (Dkt. 62-3 at 81). This is sufficient, under the relevant standard, to have put the correctional facility on notice that the placing of the restraints was at issue. Moreover, it is irrelevant that Plaintiff did not specifically name Shumaker as the corrections officer who placed the waist chain on him, because "a New York state prisoner is not required to name responsible parties in a grievance in order to exhaust administrative remedies." *Espinal v. Goord*, 558 F.3d 119, 126 (2d Cir. 2009). Accordingly, the Court finds that Shumaker has not demonstrated his entitlement to summary judgment on Plaintiff's excessive use of force claim.

IV. **First Amendment Retaliation Claim**

All Defendants seek summary judgment as to Plaintiff's claim that Defendants retaliated against him for his exercise of his rights under the First Amendment. For the reasons below, the Court finds that the State Defendants are entitled to summary judgment on this claim but that Mastrantonio and Bennett are not.

"In order for a prisoner's First Amendment retaliation claim under Section 1983 to survive summary judgment, a prisoner must show (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (quotation omitted). Here, Plaintiff's First Amendment retaliation claim is premised on his statements that he intended to file a

grievance related to the showers, which he claims was the precipitating event for the alleged beating on September 4, 2015.

The Court agrees that the State Defendants are entitled to summary judgment on Plaintiff's First Amendment retaliation claim. First, with respect to Gleason, Ellis, Aiken, and Crawford, the Court finds for the reasons discussed above that no reasonable juror could conclude that they were involved in the alleged beating. As such, Plaintiff cannot show that these defendants took adverse action against him. Second, with respect to all of the State Defendants, Plaintiff cannot show a causal connection between the alleged beating and his protected activity. In considering whether there is a "causal connection between the protected speech and the adverse action, a court may consider a number of factors, including any statements made by the defendant concerning his motivation and the temporal proximity between the protected activity and the defendant's adverse action." *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 366 (S.D.N.Y. 2011) (quotations omitted); *see also Tuitt v. Chase*, No. 9:11-CV-0776 DNH/TWD, 2013 WL 877439, at *7 (N.D.N.Y. Jan. 30, 2013), *report and recommendation adopted*, 2013 WL 877617 (N.D.N.Y. Mar. 8, 2013) (factors relevant to a consideration of causal connection "include: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation"). The Second Circuit has "held that temporal proximity between protected conduct and an adverse action constitutes circumstantial evidence of retaliation," but has also "consistently required some further

evidence of retaliatory animus before permitting a prisoner to proceed to trial on a retaliation claim." *Washington v. Afify*, 681 F. App'x 43, 46 (2d Cir. 2017).

In this case, Plaintiff did not make his statement that he intended to file a grievance to any of the State Defendants, nor is there any other evidence in the record before the Court that the State Defendants were aware of this threat. *See, e.g., Alston v. Pafumi*, No. 3:09-CV-01978 (VAB), 2016 WL 81785, at *7 (D. Conn. Jan. 7, 2016) (collecting cases granting summary judgment on First Amendment retaliation claims where the defendants were not aware of the plaintiff's protected activity). Additionally, while Plaintiff points to evidence that during the alleged assault an unidentified officer shouted "this is what you get; keep talking shit" (*see* Dkt. 66-1 at 12), this vague statement by an unknown individual is insufficient to demonstrate that the State Defendants were motivated by retaliatory intent. Nothing in this statement is particularly related to grievances, and there is no evidence that it was uttered by one of the State Defendants (as opposed to Mastrantonio or Bennett). Moreover, there is no evidence in the record before the Court that Plaintiff had a good disciplinary record (in fact, the evidence is to the contrary), and Plaintiff was never vindicated at a hearing with respect to the State Defendants, because no such hearing ever occurred. Accordingly, Plaintiff cannot establish any factors supporting retaliatory animus with respect to the State Defendants beyond temporal proximity. On these facts, a reasonable jury could not find in Plaintiff's favor on his First Amendment retaliation claim against the State Defendants.

However, the Court finds that Plaintiff has adduced sufficient evidence to permit his First Amendment claim to proceed against Mastrantonio and Bennett. As a threshold

matter, Mastrantonio and Bennett both argue that Plaintiff failed to exhaust his remedies regarding this claim. This argument lacks merit. Plaintiff's grievance dated October 8, 2015, specifically states that on September 2, 2015, Plaintiff "threatened to write grievances about the showers," and goes on to state that Plaintiff was thereafter "verbally harassed and threatened for the next two days" before being attacked, unprovoked, by Mastrantonio and Bennett on September 4, 2015. (*See* Dkt. 62-3 at 80). These allegations are sufficient to have put the prison on notice that Plaintiff was claiming retaliation with respect to the alleged beating.[2]

Bennett has failed to raise any substantive argument regarding Plaintiff's First Amendment retaliation claim. Mastrantonio, on the other hand, contends that Plaintiff cannot show that Mastrantonio was aware of Plaintiff's threat to file a grievance regarding the showers. (*See* Dkt. 63-4 at 8-9). The Court disagrees. Plaintiff has testified that while Mastrantonio and Bennett were escorting him to his appointment with social worker Gruery, Bennett said to him, "so you are the one running stuff. You are the one getting everybody to write a grievance on the company." (*See* Dkt. 66-1 at 10). Mastrantonio argues that Plaintiff did not "say where Mastrantonio [was], whether he could hear [Bennett's statement] or what . . . Mastrantonio said in response." (Dkt. 63-4 at 9). However, a reasonable jury could certainly infer, based on the necessarily close proximity

---

[2] However, to the extent Plaintiff is claiming that Bennett and Mastrantonio retaliated against him by filing a false misbehavior report, the Court agrees that such a claim is unexhausted. Plaintiff's grievances make no mention of a false misbehavior report, and therefore cannot have put the prison on notice that Plaintiff was claiming such a misbehavior report was retaliatory.

of two guards escorting an inmate in a maximum-security prison, that Mastrantonio witnessed this remark by Bennett. Moreover, accepting Plaintiff's version of the facts, Mastrantonio and Bennett shortly thereafter engaged in a coordinated, unprovoked attack on Plaintiff. These facts are sufficient to raise material questions as to whether Mastrantonio and Bennett were acting in a retaliatory fashion. As such, Mastrantonio and Bennett are not entitled to summary judgment on Plaintiff's First Amendment retaliation claim.

## CONCLUSION

For the foregoing reasons, the Court: (1) grants in part and denies in part the State Defendants' motion for summary judgment (Dkt. 62); (2) grants in part and denies in part Mastrantonio's motion for partial summary judgment (Dkt. 63); and (3) grants in part and denies in part Bennett's motion for partial summary judgment (Dkt. 64). Specifically, the Court grants summary judgment in favor of defendants Bennett and Mastrantonio on Plaintiff's due process claims, grants summary judgment in favor of defendants Edwards, Shumaker, Gleason, Ellis, Aiken, and Crawford on Plaintiff's First Amendment retaliation claim, and grants summary judgment in favor of defendants Gleason, Ellis, Aiken, and Crawford on Plaintiff's excessive use of force claim. The Court denies the pending motions for summary judgment in all other respects, so that the following claims remain: (1) excessive use of force against defendants Shumaker, Edwards, Mastrantonio, and Bennett; and (2) First Amendment retaliation against defendants Mastrantonio and Bennett based on the alleged assault on September 4, 2015. The Clerk of Court is directed to enter

judgment in favor of Gleason, Ellis, Aiken, and Crawford and to terminate them as defendants in this matter.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: December 16, 2019
　　　　Rochester, New York